

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2004

# Medtronic Ave Inc v. Cordis Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1042

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Medtronic Ave Inc v. Cordis Corp" (2004). *2004 Decisions.* Paper 760.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/760

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1042
_____

MEDTRONIC AVE INC., Medtronic Vascular, Inc.,
a/k/a Medtronic Vascular, Inc.

v.

CORDIS CORPORATION,

*Appellant*

_____

On Appeal From the United States District Court
For the District of Delaware
(D.C.  No.  03-cv-00402)
District Judge: Honorable Sue L. Robinson
_____

Argued March 26, 2004

Before: AMBRO, CHERTOFF and BECKER, *Circuit Judges*.

(Filed:  April 30, 2004)


_____

OPINION
_____

KAREN J. LOUDEN
Morris, Nichols, Arsht & Tunnell
1201 North Market Street

P.O. Box 1347
Wilmington, DE 19899

RAPHAEL V. LUPO (Argued)
NATALIA BLINKOVA
DONNA M. TANGUAY
McDermott, Will & Emery
600 13th Street, NW
Washington, DC 20005

ELLIOT SILVERMAN
McDermott, Will & Emery
18191 Von Karman Avenue
Suite 400
Irvine, CA 92612

      *Attorneys for Appellee*

GREGORY L. DISKANT (Argued)
EUGENE M. GELERNTER
WILLIAM F. CAVANAUGH, JR.
WENDY E. KEMP
SCOTT B. HOWARD
KATHLEEN M. CROTTY
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036

      *Attorneys for Appellant*

_____

OPINION
_____

BECKER, *Circuit Judge*.

This appeal by Cordis Corp. ("Cordis"), the defendant in a patent infringement

lawsuit brought against it by Medtronic AVE, Inc. ("Medtronic AVE"), requires us to

2

decide whether Cordis's claim that it has a license to use certain patents should be

determined by an arbitrator. The District Court held that the dispute was not arbitrable,

and enjoined arbitration. We will vacate and remand. Because the parties are fully

familiar with the background facts and procedural history we need not set them forth, and

limit our discussion to our *ratio decidendi*.[1]

I.

Medtronic AVE's suit alleges that Cordis is infringing certain patents (the

"Boneau patents") in the field of coronary stents. Cordis asserts as one of its defenses

that it has a license to use the patents under a Settlement and License Agreement (the

"Agreement") that it entered into with the parent corporation of Medtronic AVE to settle

prior litigation.[2] At the District Court, Cordis sought to stay the proceedings in the

infringement suit and compel arbitration on the issue of its license defense. Medtronic

AVE opposed. The District Court first held that the dispute was arbitrable, but then on

---

[1]We exercise "plenary review over legal questions concerning the applicability and scope of an arbitration agreement." *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 119 (3d Cir. 2002) (citing *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys. Inc.*, 247 F.3d 44, 53-54 (3d Cir. 2001)). At all events, where "the district court engages in contract construction"—as it did here—"we exercise plenary review." *Id.* (citing *Medtronic AVE*, 247 F.3d at 53-54).

[2]Medtronic AVE's parent corporation, Medtronic, Inc., entered into this agreement with Cordis prior to its acquisition of Arterial Vascular Engineering, Inc. (which, upon acquisition, was renamed Medtronic AVE, Inc. and has since been renamed Medtronic Vascular, Inc.).

reconsideration held that it was not. The District Court entered an order enjoining arbitration, and denied Cordis's motion to stay its proceedings. Cordis appeals to this Court under 9 U.S.C. § 16(a)(1)(A), which provides for interlocutory review of an order "refusing a stay of any action" pending arbitration.

The contract dispute at issue is governed by state law (New York law, under § 11.04 of the Agreement), though we are also guided by cases decided under the Federal Arbitration Act, codified as amended at 9 U.S.C. §§ 1-16. These cases, which lay down the overarching principles by which arbitration clauses are interpreted, are *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983) (explaining that there is a "liberal federal policy favoring arbitration"); *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) ("'[An] order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960))); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."); and *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000) ("'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" (quoting *Patten Sec. Corp. v. Diamond Greyhound & Genetics,*

4

*Inc.*, 819 F.2d 400, 405-07 (3d Cir. 1987))).

## II.

These are useful guidelines, and they are all easily satisfied in this case because we conclude that the contract clearly makes this dispute arbitrable. Two provisions from the agreement command our attention. First is language from Article V, which is captioned "Resolution of Patent Disputes":

> In addition [to other provisions specific to certain enumerated patents], any dispute, claim, or controversy arising under this Agreement which relates to patent matters, the resolution of which is not specifically provided for [in another part of the Agreement], shall be resolved pursuant to binding arbitration . . . .

Agreement § 5.02. Second is language from Article X, which is captioned "Alternative Dispute Resolution":

> Any dispute, claim, or controversy ("disputes") arising from or relating to this Agreement or alleged breaches thereof (excluding all disputes related to patent matters, such as all disputes related in whole or in part to a Licensed Patent or any patent alleged to be a Licensed Patent or related to whether a product is in the Field, which disputes shall be resolved pursuant to Article V) . . . shall be resolved by binding Alternative Dispute Resolution . . . .

Agreement § 10.01. Article X and Article V provide (in sections we have not reproduced) somewhat different procedures for dispute resolution.

We agree with Cordis that Article X establishes a seamless division of "dispute[s], claim[s], [and] controvers[ies]" into two classes: Those that are arbitrable under Article X and those that are arbitrable under Article V, the latter being "disputes related to patent

5

matters." So long as a dispute "aris[es] from or relat[es] to" the Agreement, it must be arbitrated under either Article V or Article X. There is simply no basis in the plain language of the Agreement for Medtronic AVE 's contention that there is an unspoken third category of disputes (to which putative class the instant dispute would belong) that is not governed by either Article V or Article X. This is not "Scylla and Charybdis" where one may pass in the narrow channel between; rather, in the Agreement, "all roads lead to Rome," for the license issue is either subject to Article V, or if it is not subject to Article V, then it is necessarily subject to Article X.

These conclusions, of course, depend upon the accuracy of the proposition that the dispute in question "aris[es] from or relat[es] to" the Agreement. The District Court held on reconsideration that, this being a licensing agreement, only disputes about *licensed* patents would "aris[e] from or relat[e] to" the Agreement. Since the Court concluded that the Boneau patents were not licensed under the Agreement (and hence not covered by the Agreement), it held that this dispute did not arise from the Agreement, and hence was not arbitrable. Medtronic AVE endorses this reasoning on appeal. We disagree.

Preliminarily, we note the longstanding rule that courts "have no business weighing the merits" of the issue proposed to be arbitrated. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). This was, as the District Court recognized, the effect of its ruling on reconsideration. This alone does not render the District Court's analysis incorrect, for there may be cases in which a preliminary ruling on the merits is

6

unavoidable.  In this case, however, a review of (and ruling on) the merits was entirely unnecessary because the District Court erred in its construction of the Agreement's "arising from" language.

We give an expansive interpretation to "arising from."  As we explained in *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000), "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction."  Coupled with our usual strong presumption in favor of arbitrability, *see, e.g.*, *Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 778 (3d Cir. 1984), a clause providing for the arbitration of all matters "arising from" an agreement overwhelmingly suggests that a given dispute is arbitrable.  Cordis also directs us to interpretations of similar language in a variety of other arbitration agreements.  For example, in *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Inc.*, 1 F.3d 639, 642 (7th Cir. 1993), the Court interpreted an arbitration clause applying to disputes "arising out of the agreement" as covering "any dispute between the contracting parties that is in any way connected with their contract."[3]

---

[3]Two of the cases cited by Cordis address whether disputes about the very formation of the contract that contains the arbitration clause are arbitrable.  These decisions follow the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967), which held that apart from issues that go to the making of the agreement to arbitrate (i.e., the arbitration clause itself), disputes about the very formation of the contract are arbitrable.  It seems to us that if this marks the outer limit of what issues are arbitrable under an "arising from" clause, then the dispute in this case is comfortably in the heartland of disputes that ought to be arbitrated under the language of the Agreement.

7

Moreover, as arbitration clauses are close cousins of jurisdictional provisions, we can look to the "arising under" language of Article III, section 2 of the United States Constitution. "A case 'arises' under the Constitution or a law of the United States . . . whenever its correct decision depends on the construction of either." *Black's Law Dictionary* 108 (6th ed. 1990). Adapting that principle to this case, a dispute will "aris[e] from" the Agreement whenever the correct resolution of the dispute depends on the construction of the Agreement. The validity of Cordis's license defense unquestionably turns on the construction of the Agreement.

This interpretation is confirmed by the language of the Agreement itself. As quoted above, § 10.01 of the Agreement carves out (in the "excluding . . ." clause) certain disputes from the coverage of Article X. Of course, something can be *excluded* only if it would otherwise be *included*, and so disputes "related to patent matters, such as disputes related in whole or in part to a Licensed Patent or any patent alleged to be a Licensed Patent" must be a subset of the larger set of disputes "arising from or relating to this Agreement or alleged breaches thereof." Because Cordis seeks to arbitrate a "dispute related . . . in part to . . . [a] patent alleged to be a Licensed Patent," the question whether Cordis enjoys a license to the Boneau patents does indeed arise under the Agreement, and hence is arbitrable.

New York law, which governs our interpretation of the Agreement, unquestionably supports this interpretation. In *Shaw Group Inc. v. Triplefine*

8

*International Corp.*, 322 F.3d 115, 120 (2d Cir. 2003), the Court of Appeals for the Second Circuit applied New York law to interpret an arbitration clause which provided that "[a]ll disputes [between the parties] concerning or arising out of this Agreement shall be referred to arbitration."  The Court interpreted the "arising out of" language very broadly, holding that it required referring even the issue of arbitrability to the arbitrator. *See id.* at 121-25.  Furthermore, in that discussion, the Court noted that in *Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884 (N.Y. 1997), the New York Court of Appeals had broadly construed language providing for the arbitration of "any controversy."  Clearly "any dispute, claim, or controversy" (as used in Article X of the Agreement) is at least as expansive as "any controversy" (as used in the *Smith Barney Shearson* agreement).

Moreover, Medtronic AVE has advanced no plausible argument why the "arising from" language should *not* be construed this way.  By contrast, for example, the plaintiff in *Battaglia*—who, like Medtronic AVE, sought to avoid arbitration—advanced an argument on appeal that the structure of the agreement at issue rendered the arbitration clause inapplicable to certain matters.  *See Battaglia*, 233 F.3d at 728-29.  Medtronic AVE offers no such argument, yet the requirement of "positive assurance" that an arbitration clause is inapplicable places the burden squarely on Medtronic AVE in this case.  *See AT&T Techs.*, 475 U.S. at 650  ("'[An] order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not

9

susceptible of an interpretation that covers the asserted dispute.'" (quoting *Warrior &*

*Gulf Navigation Co.*, 363 U.S. at 582-83)).  We cannot *plausibly* say—let alone say with

"positive assurance"—that the "arising from" language does not require arbitration of the

license issue.

Finally, we note that our decision comports with the long line of cases that hold

that arbitrability is ultimately a question for the arbitrator to resolve.  *See Sharon Steel*,

735 F.2d at 779 ("[T]he Federal Arbitration Act gives the arbitrator the power to

determine the scope of the arbitration clause as well as the substantive merits of the

claim." (citing *Acevedo Maldonado v. PPG Indus.*, 514 F.2d 614, 617 (1st Cir.1975)).

III.

We limit our holding to the arbitrability of the existence *vel non* of a license to the

Boneau patents, but we also note Cordis's counsel's position at oral argument that Cordis

seeks to arbitrate *only* the license issue, and does not argue that Medtronic AVE's entire

lawsuit should be referred to arbitration.[4]  We need not decide whether arbitration in this

case should proceed under the provisions of Article V or Article X; the parties may be

able to agree between themselves, and if not, the District Court should have the

---

[4]Medtronic AVE protests that ruling in Cordis's favor makes virtually any dispute
between the parties arbitrable.  As this case demonstrates, Medtronic AVE is correct that
disputes between the parties in which the Agreement is invoked are arbitrable—though
only in part, because only those issues "arising from" the Agreement are arbitrable.  This
is a far cry from construing the Agreement to give the parties *carte blanche* to arbitrate
*the whole* of *any* dispute between them, which we of course do not do.

10

opportunity to resolve that issue in the first instance. And we of course intimate no view on the merits of the controversy. *See Am. Mfg. Co.*, 363 U.S. at 567-68.

The order of the District Court will be vacated, and the case remanded with instructions for the District Court to enter an order compelling arbitration of the license issue. The mandate shall issue forthwith.

AMBRO, Circuit Judge, concurring

I concur in the outcome reached by my colleagues, which vacated the District Court's denial of arbitration. I agree that the District Court erred in reaching the merits of the dispute to decide arbitrability. I also agree that "all roads lead to Rome," *i.e.*, arbitration (though there may be one more road not mentioned in Judge Becker's opinion). But I disagree with my colleagues' blanket statement that arbitrability itself is a question for the arbitrator.

It is unnecessary to leave the resolution of arbitrability to the arbitrator in this case. In *Sharon Steel Corp. v. Jewell Coal and Coke Co.*, 735 F.2d 775, 779 (3d Cir. 1984), we did so because "[t]he heart of the problem in th[at] case [wa]s the fact that the question of arbitrability [wa]s intertwined with the merits . . . ." We do not have the same problem here because, as Judge Becker notes, reviewing the merits is wholly unnecessary to decide the question of arbitrability. As a result, the scope (or applicability) of an arbitration agreement is a question for judicial determination. *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 54 (3d Cir.

11

2001) ("[Under the Federal Arbitration Act,] the issue of whether the dispute is within the scope of the agreement requires district court resolution." (citing *AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 649 (1986); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 510-11 (3d Cir. 1990))). There is no harm here, however, for my colleagues and I do decide that the dispute is arbitrable rather than leaving that decision to the arbitrator.

I make one other comment–less substantive but necessarily lengthier. It is that there may be yet another "road to Rome." I begin for background with the dispute (which, of course, we are not deciding). At base, it is whether, under the Settlement and License Agreement, Cordis has a license to the Boneau patents owned by Medtronic AVE.[5] If so, Cordis is not infringing these patents by using them.

Medtronic claims that the Boneau patents are not licensed to Cordis. It points to § 1.03 of the Agreement, which defines the patents subject to its cross-licensing provisions. Section 1.03 provides that licensed patents under the Agreement "means any and all patents . . . that are . . . owned by Medtronic or its Affiliates . . . on the Effective Date." Medtronic AVE emphasizes that, on "the Effective Date [of the Agreement]"–November 4, 1997–the Boneau patents were not owned by Medtronic or

_____

[5]As noted by Judge Becker, Medtronic AVE was formerly known as Arterial Vascular Engineering, Inc. ("AVE"). It was acquired by Medtronic Inc. ("Medtronic") in January 1999. Medtronic gave AVE a new name–Medtronic AVE. Medtronic AVE (the subsidiary), and not Medtronic (the parent), is the appellee in this case. It was Medtronic, and not Medtronic AVE, who signed the Agreement.

12

its Affiliates.  Appellee's Br. at 29-30.  They belonged to AVE, who was not affiliated with Medtronic at that time.  *Id.* at 30.  Thus, Medtronic AVE argues, Medtronic could not have licensed out the patents it did not own as of November 4, 1997.  *Id.* at 30-31.

Cordis counters by pointing out that § 1.01 of the Agreement defines "Affiliate" as "any entity that is controlled by [Medtronic], on the Effective Date or, subject to Section[] 11.02(d) or 11.02(e)[6] hereof, *becomes controlled by such party, after the Effective Date*."  Appellant's Br. at 13 (footnote and emphasis added).  Cordis claims that because AVE, the owner of the Boneau patents, became controlled by Medtronic after November 4, 1997, it is an "Affiliate" of Medtronic under the Agreement whose patents (including Boneau patents) can be licensed by Cordis.  *Id.*

Medtronic AVE does not dispute "Affiliate" includes after-acquired companies such as itself under §1.01.[7]  It argues, however, that §1.01 merely meant to confer the benefit of the cross-license *to* after-acquired companies without any corresponding

---

[6]Section 11.02(e) is not relevant to my analysis.  Thus I do not quote it.  Section 11.02(d) provides that "[i]f one of the parties hereto acquires a Major Competitor . . ., then such party's license rights shall not be extended to cover any products of such Major Competitor."  AVE, the predecessor of Medtronic AVE, is identified in §1.05 of the Agreement as one of the Major Competitors of the signatory parties.  Thus, applied to our facts the provision presumably would read: "If [Medtronic] acquires [AVE] . . ., then [Medtronic's] license rights shall not be extended to cover any products of [AVE]."  In light of the fact that Medtronic owns AVE, the sentence is *narrishkeit*.  To make sense of it, should, for example, "such party's" have been "J&J's", or should "license rights" have been "rights as licensor"?

[7]Thus, Medtronic AVE does not challenge the District Court's ruling that Medtronic AVE is bound by a valid arbitration agreement.  It instead claims that the particular issue Cordis seeks to arbitrate is not within the scope of the arbitration agreement.

13

obligation to cross-license their patents (such as the Boneau patents). Appellee's Br. at 30. Cordis counters that after-acquired companies are subject to the obligation of licensing their patents, by pointing to §11.02(a), which provides that the Agreement *"shall be binding upon* and inure to the benefit of Medtronic . . . and [its] Affiliates," and "Affiliates" include after-acquired companies. Medtronic AVE does not respond to this argument. It, however, claims that its patents are not covered under §11.02 because §11.02(d) (the scrambled carve-out provision quoted in note 2) specifically refers to the products, and not the patents, of major competitors.

I agree with Cordis that this dispute is a merits question that should be decided by the arbitrator, not by our Court.[8] If the arguments proceed as set out above, the resolution of that dispute turns on how to read § 1.01 and § 11.02 of the Agreement. Insofar as the resolution of the issue depends on the reading of §1.01 ("Affiliate"), the issue is arbitrable under Article X, which covers "[a]ny dispute, claim, or controversy . . . arising from or relating to this Agreement . . . ." To the extent that the dispute involves interpreting what obligation, if any, is imposed on after-acquired affiliates by § 11.02, the issue is subject to the arbitration clause in § 11.02(g), which provides that "[a]ny dispute, claim, or controversy arising under the provisions of this Section 11.02 shall be resolved

---

[8]Medtronic AVE also argues, and the District Court agreed, that the two amendments to the Agreement support the conclusion of non-arbitrability. The amendments purported to grant the parties license rights to patents owned by specific after-acquired companies. The amendments are, if anything, evidence with respect to the underlying dispute, not the arbitrability of it.

pursuant to binding arbitration . . . under the provisions of Article X . . . ."

In any event, and under any interpretation, the analytical path leads to arbitration. Thus I concur.