■ SMITH BARNEY SHEARSON, INC., et al., Appellants, v JEFFREY S. SACHAROW et al., Respondents. [656 NYS2d 203] —Order of the Supreme Court, New York County (Alice Schlesinger, J.), entered May 2, 1995, which dismissed the petition to stay arbitration, is unanimously affirmed, without costs or disbursements.

The Sacharow respondents filed a statement of claim with the National Association of Securities Dealers (NASD) seeking arbitration of various claims arising from investments made by the petitioner Smith Barney Shearson, Inc. (now known as Smith Barney, Inc.) in an IRA account maintained by respondents' father. In addition to seeking an accounting, the respondents claimed petitioner committed fraud, breached its fiduciary duties, was negligent and committed a breach of contract. The petitioner brought this CPLR article 75 proceeding to stay arbitration pursuant to NASD Code of Arbitration Procedure § 15, which provides: "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction."

In the arbitration agreement, the parties agreed that New York law would apply.

The IAS Court granted the petition to stay arbitration relying on the Court of Appeals decision in *Matter of Smith Barney, Harris & Upham Co. v Luckie* (85 NY2d 193, *cert denied sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith*, 516 US 811). In *Luckie*, the Court of Appeals found that the timeliness of claims sought to be arbitrated pursuant to agreements governed by the Federal Arbitration Act (9 USC § 1 *et seq.*) and containing a New York choice of law provision

is a question properly resolved by the courts, not the arbitrator. "New York's rule permitting the courts to address Statute of Limitations defenses to arbitration where the parties so choose in no way interferes with the parties' contractual freedom to choose arbitration or even to choose arbitration 'under applicable state rules'—the overarching goal of the FAA (*Empire Blue Cross & Blue Shield v Greeson's A Place for Us*, 985 F2d 459, 462 [9th Cir 1993]). In fact, by honoring the parties' selection of New York law to govern their agreement and its enforcement, our holding advances the Federal policy of 'ensur[ing] the enforceability according to their terms, of private agreements to arbitrate' (*Volt*, 489 US, at 476, *supra*)." (*Matter of Smith Barney, Harris Upham & Co. v Luckie, supra*, at 206.)

Thereafter, the United States Supreme Court decided *Mastrobuono v Shearson Lehman Hutton* (514 US 52), and the IAS Court granted reargument and denied petitioner's application for a permanent stay of arbitration.

Initially, we note that rules such as section 15 of the NASD's Code of Arbitration Procedure, which both parties agreed to, are not simply procedural limitations on the timeliness of a claim but limitations on the power of the arbitrator to entertain such claims. Section 15 and other like rules are *eligibility* requirements, not Statutes of Limitation (*see, Matter of Merrill Lynch, Pierce, Fenner & Smith v Manhard*, 201 AD2d 347, *revd in part on other grounds* 85 NY2d 193; *Merrill Lynch, Pierce, Fenner & Smith v DeChaine*, 194 AD2d 472, *lv denied* 82 NY2d 657). Absent an agreement by the parties to the contrary, an issue raised pursuant to such sections must be determined by the courts since eligibility is a question of substantive arbitrability. This is true *regardless* of whether the arbitration agreement contains a New York choice of law provision (*see, Jones & Co. v Sorrells*, 957 F2d 509, 512; *PaineWebber Inc. v Hartmann*, 921 F2d 507, 513).

Moreover, *Mastrobuono (supra)* did not overrule or limit the Court of Appeals decision in *Smith Barney v Luckie (supra)*. In *Mastrobuono*, the United States Supreme Court simply interpreted the specific language of an "ambiguous" choice of law clause with respect to the issue of the availability of punitive damages in arbitration under general rules of contract construction. This was done in the procedural context of reviewing a Federal court's interpretation of the contract regarding the requirements imposed by State law.

" '[I]t does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set

forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see *Mitsubishi [Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.,* 473 U. S. 614, 628 (1985)], so too may they specify by contract the rules under which that arbitration will be conducted.' *Volt [Information Sciences v Board of Trustees of Leland Stanford Jr. Univ.],* 489 U. S., at 479. * * *

"In *Volt,* however, we did not interpret the contract *de novo.* Instead, we deferred to the California court's construction of its own State's law. [489 US], at 474 ('[T]he interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review'). In the present case, by contrast, we review a *federal* court's interpretation of this contract" (*Mastrobuono v Shearson Lehman Hutton,* 514 US 52, 57, 60, n 4, *supra*).

This interpretation is fortified by the rule enunciated in *First Options v Kaplan* (514 US 938), where the United States Supreme Court held that the presumption in favor of arbitration where the agreement is silent or ambiguous as to whether a dispute as to the merits is arbitrable is reversed when the issue is who should decide arbitrability. Thus, when the agreement is not clear or silent as to whether the courts or the arbitrator should decide whether a dispute can be arbitrated, the matter is left to decision by the court (*supra*). Accordingly, the court should not presume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so (*supra*).

Therefore, the final consideration for this Court is whether the parties agreed to arbitrate the issue of eligibility or left it to the court by silence or ambiguity in the agreement (*First Options v Kaplan, supra*). New York's rule permitting the courts to address Statute of Limitations defenses to arbitration (*Matter of Smith Barney, Harris & Upham Co. v Luckie, supra*) is not to the contrary. Thus, the Court of Appeals has noted in that case "New York's rule permitting the courts to address Statute of Limitations defenses to arbitration *where the parties so choose*" and that New York honors "the parties' selection of New York law to govern their agreement *and its enforcement*" (*supra,* at 206; emphasis added). Here, the respondents agreed to arbitrate "[a]ny controversy arising out of or relating to any

\* \* \* accounts, or transactions with [petitioner] \* \* \* *or to this agreement*" (emphasis added). This clearly and unambiguously indicates that the parties agreed to arbitrate *all* disputes, including eligibility.

Finally, since we decide these claims are arbitrable, respondents' claims for attorneys' fees arising from them should also be arbitrated. As noted, the arbitration clause provided for arbitration of "[a]ny controversy arising out of or relating to \* \* \* this agreement". Concur—Sullivan, J. P., Ellerin, Nardelli and Williams, JJ.