OPINION OF THE COURT
 

 Bellacosa, J.
 

 These two issue-related proceedings concern arbitrability of disputes arising out of respective securities transactions executed by petitioner Smith Barney on behalf of two of its customer investors. Section 15 of the NASD Code of Arbitration Procedure provides that claims of over six years’ duration are ineligible for arbitration. In this common procedural setting, that provision evokes two questions: first, arbitrability of the ineligibility time bar and, then, the appropriate forum for the determination of that threshold issue — arbitration or court.
 

 L
 

 Smith Barney, Inc. (and its broker Edward Greenhill in the
 
 Sacharow
 
 case only) turned to a court under CPLR article 75 to try to stay the Sacharow demand for arbitration. It proceeded likewise and alone against the Hause arbitration demand. Smith Barney now appeals in each proceeding, pursuant to leave granted by this Court, from two Appellate Division orders directing the arbitrations to go forward in plenary fashion. We now affirm.
 

 Sacharow
 

 The brothers Sacharow are the executors of the estate of their father, a deceased physician. In 1994, they filed a statement of claim with the National Association of Securities Dealers (NASD) seeking arbitration concerning investments made by Smith Barney through one of its brokers, Edward Green-hill. The Sacharows contended that, as a result of their father’s medical condition, he was unable to monitor his brokerage account. They alleged that Greenhill made risky and speculative investments, resulting in a substantial depletion of their father’s investment account. Their demand for damages and
 
 *43
 
 attorney’s fees was based on fraud, negligence, and breach of contract.
 

 The customer agreement between Dr. Sacharow and Smith Barney contained two relevant clauses: (1) "[a]ny controversy * * * shall be settled by arbitration” in accordance with the rules of the NASD Code; and (2) the agreement "shall be governed by the laws of the State of New York without giving effect to [its] choice of law or conflict of laws provisions.”
 

 Smith Barney and Greenhill moved to block the arbitration on the ground that the claims were ineligible, since the subject transactions were executed six years prior to the filing of the statement of claim. They added that eligibility for arbitration is an arbitrability question, whose determination is reserved solely to the courts.
 

 Supreme Court initially granted the stay, relying on
 
 Matter of Smith Barney, Harris Upham & Co. v Luckie
 
 (85 NY2d 193,
 
 cert denied sub nom. Manhard v Merrill Lynch, Pierce Fenner & Smith,
 
 516 US 811). The Sacharows were granted reconsideration upon bringing
 
 Mastrobuono v Shearson Lehman Hutton
 
 (514 US 52) to the trial court’s attention. The nisi prius court then (1) denied Smith Barney’s application; (2) directed the parties to proceed to arbitration; and (3) dismissed the petition.
 

 The Appellate Division affirmed, stating:
 

 "Initially, we note that rules such as section 15 of the NASD’s Code of Arbitration Procedure, which both parties agreed to, are not simply procedural limitations on the timeliness of a claim but limitations on the power of the arbitrator to entertain such claims. Section 15 and other like rules are
 
 eligibility
 
 requirements, not Statutes of Limitation. Absent an agreement by the parties to the contrary, an issue raised pursuant to such sections must be determined by the courts since eligibility is a question of substantive arbitrability. This is true
 
 regardless
 
 of whether the arbitration agreement contains a New York choice of law provision” (238 AD2d 155, 156 [citations omitted] [emphasis in original]).
 

 The Appellate Division added that
 
 Mastrobuono
 
 did not overrule or limit the Court of Appeals decision in
 
 Luckie
 
 because "[i]n
 
 Mastrobuono,
 
 the United States Supreme Court simply interpreted the specific language of an 'ambiguous’ choice of
 
 *44
 
 law clause with respect to the issue of the availability of punitive damages in arbitration under general rules of contract construction” (238 AD2d, at 156). Then, interrelating
 
 First Options of Chicago v Kaplan
 
 (514 US 938), the Appellate Division concluded that the language of the Sacharow arbitration provision "clearly and unambiguously indicates that the parties agreed to arbitrate
 
 all
 
 disputes, including eligibility” (238 AD2d, at 158 [emphasis in original]).
 

 Hause
 

 Here, the elderly, retired customer authorized a Smith Barney representative to invest a substantial portion of her assets into a single, highly speculative, limited partnership. This occurred in 1986 and 1987, and the authorization was based on Smith Barney’s advice. The customer suffered substantial losses and then filed a claim and an arbitration demand with the NASD alleging misrepresentation, among other things. The customer agreement contained the same relevant provisions as in
 
 Sacharow.
 

 Smith Barney again turned to the court to block the arbitration. Supreme Court granted the stay motion, reasoning that the claims were ineligible under NASD Code § 15. The Appellate Division in this instance reversed and denied the stay (238 AD2d 104). The Court noted that while section 15 of the NASD Code is an eligibility provision that would ordinarily constitute a question of arbitrability to be decided by the courts, here the "clear and unmistakable evidence [is] that the parties intended that it would be decided by the arbitrator” and the entire matter should be kept out of the courts (238 AD2d, at 106). The Court concluded that the plain language of this arbitration clause "clearly extends to the question of whether certain transactions are covered by the scope of the agreement” (238 AD2d, at 106). Finally, the Court found that the language in the arbitration clause "overrides any implication that could be drawn from a simple New York choice of law clause that the parties intended that the courts would decide section 15 eligibility” (238 AD2d, at 108).
 

 IL
 

 The threshold question for us to decide is whether the eligibility feature of section 15 of the NASD Code is a condition precedent to arbitration and, thus, whether it constitutes a question of arbitrability. Smith Barney argues that the plain language of this provision absolutely precludes six-year and older claims from arbitration. It views the six-year time-
 
 *45
 
 measuring period as a condition precedent to arbitration. The customers’ position is that the section 15 six-year "éligibility” provision is a procedural limitation properly within the arbitrators’ contractually agreed-to range of authority
 
 (see, PaineWebber Inc. v Elahi,
 
 87 F3d 589, 601).
 

 Section 15 of the NASD Code provides that "[n]o dispute, claim, or controversy shall be
 
 eligible for submission to arbitration
 
 under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy” (emphasis added). This language limits the subject of, entitlement to and range of arbitrable matters. Thus, it may not be viewed simply as a procedural Statute of Limitations.
 

 Several lower State courts have agreed that section 15 of the NASD Code is a substantive eligibility requirement, rather than just a Statute of Limitations, a "mere” proceduralism
 
 (see, Merrill Lynch, Pierce, Fenner & Smith v Ohnuma,
 
 218 AD2d 572, 573;
 
 Matter of Merrill Lynch, Pierce, Fenner & Smith [Manhard],
 
 201 AD2d 347,
 
 revd in part on other grounds
 
 85 NY2d 193,
 
 cert denied
 
 516 US 811;
 
 Merrill Lynch, Pierce, Fenner & Smith v Dechaine,
 
 194 AD2d 472;
 
 Matter of Prudential Bache Sec. v Archard,
 
 179 AD2d 652, 653;
 
 but see, Matter of Prudential Sec. [Purello],
 
 206 AD2d 713, 714). Numerous Federal courts have also reached the same result
 
 (see, Smith Barney v Sarver,
 
 108 F3d 92, 96 [6th Cir 1997];
 
 Cogswell v Merrill Lynch, Pierce, Fenner & Smith,
 
 78 F3d 474, 481 [10th Cir 1996];
 
 Merrill Lynch, Pierce, Fenner & Smith v Cohen,
 
 62 F3d 381, 383-384 [11th Cir 1995];
 
 Paine Webber Inc. v Hofmann,
 
 984 F2d 1372, 1379 [3d Cir 1993];
 
 Jones & Co. v Sorrells,
 
 957 F2d 509, 512-513 [7th Cir 1992];
 
 see also, Paine Webber Inc. v Hartmann,
 
 921 F2d 507, 513 [3d Cir 1990];
 
 but see, Smith Barney Shearson v Boone,
 
 47 F3d 750, 753 [5th Cir 1995]).
 

 We are persuaded that the plain language of the NASD eligibility rule presents a question of arbitrability. That proviso, thus, creates a substantive feature that may affect the right and obligation to arbitrate.
 

 IIL
 

 Turning to the next step of our analysis, we note the well-settled proposition that the question of arbitrability is an issue generally for judicial determination in the first instance
 
 (see, Matter of Primex Intl. Corp. v Wal-Mart Stores,
 
 89 NY2d 594, 598;
 
 Sisters of St. John the Baptist v Geraghty Constructor,
 
 67
 
 *46
 
 NY2d 997, 998;
 
 Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,
 
 37 NY2d 91, 95;
 
 see also, First Options of Chicago v Kaplan,
 
 514 US 938, 944,
 
 supra; AT&T Technologies v Communications Workers,
 
 475 US 643, 649). An important legal and practical exception has evolved which recognizes, respects and enforces a commitment by the parties, nevertheless, to arbitrate even that issue when they
 
 "clearly and unmistakably [so]
 
 provide”
 
 (AT&T Technologies v Communications Workers, supra,
 
 475 US, at 649 [emphasis added];
 
 see, First Options of Chicago v Kaplan, supra,
 
 514 US, at 944). Thus, we should examine and determine whether the parties here evinced a "clear and unmistakable” agreement to arbitrate arbitrability as part of their alternative dispute resolution choice.
 

 The Second Circuit Court of Appeals recently applied the exception in a section 15 NASD Code context
 
 (see, Paine Webber Inc. v Bybyk,
 
 81 F3d 1193, 1199). It concluded that "the arbitration agreement [which similarly provided that 'any and all controversies * * * shall be determined by arbitration’] evince[d] the parties’ intent to submit issues of arbitrability to the arbitrators”
 
 (id.,
 
 at 1196). The court found the "any and all controversies” language of the agreement to be "inclusive, categorical, unconditional and unlimited”
 
 (id.,
 
 at 1199). It noted that "[t]he words 'any and all’ are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration”
 
 (id.).
 
 The court stated that the appropriate remedy for the party alleging a violation of section 15 of the NASD Code "is to defend the arbitration action on timeliness grounds, not to enjoin arbitration altogether”
 
 (id.,
 
 at 1200).
 

 We are persuaded that these assembled authorities have fashioned a balanced and sound view. The instant proceedings and appeals thus qualify for application of the arbitrability inclusive exception. Notably, the drafters of these agreements include the investment houses through their customarily uniform industry standards and forms, and they can adequately protect their interests with specificity of inclusion and exclusion.
 

 Coupled with the plain and sweeping language of the arbitration clause in the instant agreements and the analysis of the persuasive authorities, section 35 of the NASD Code (now rule 10324) buttresses our conclusion concerning the parties’ intent and commitment to arbitrate the issue of arbitrability. Section 35 provides that "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions
 
 *47
 
 under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator^).”
 

 Courts have interpreted the incorporation of this provision in the agreements of parties as "a 'clear and unmistakable’ expression of their intent to leave the question of arbitrability to the arbitrators”
 
 (FSC Sec. Corp. v Freel,
 
 14 F3d 1310, 1312-1313;
 
 see, Paine Webber Inc. v Bybyk,
 
 81 F3d 1193, 1202,
 
 supra).
 
 The reasoning is that "by adopting the NASD Code of Arbitration Procedure as the rules governing their dispute, [the parties] agreed to give the arbitrators discretion via section 35 of [the] Code to interpret section 15’s time limitation”
 
 (FSC Sec. Corp. v Freel, supra,
 
 14 F3d, at 1313). Stated differently, "[t]he language of the [NASD] Code itself commits all issues, including issues of arbitrability and timeliness, to the arbitrators”
 
 (Paine Webber Inc. v Bybyk, supra,
 
 81 F3d, at 1202). Indeed, "[n]othing in the NASD Code removes section 15 from the ambit of section 35”
 
 (id.).
 

 IV.
 

 We must now round out the interrelated features of this analysis with the New York choice of law provision in the instant customer agreements. The potential clash between an arbitration clause and a New York choice of law provision has engendered some perplexity. To relieve the tensions or balance the competing objectives, we conclude that the parties’ contractual choice of New York law should not trump the core arbitration provision. A boilerplate choice of law clause does not necessarily signify the parties’ acceptance of limitations imposed by New York law with respect to the contractually conferred power on an arbitrator to determine all issues, including arbitrability. Sharper probity and particularization of analysis are necessary.
 

 Matter of Smith Barney, Harris Upham & Co. v Luckie
 
 (85 NY2d 193,
 
 supra)
 
 is instructive. This Court held that the New York choice of law provision in a customer agreement effectively incorporated New York’s rule that threshold Statute of Limitations questions are for the courts
 
 (id.,
 
 at 202;
 
 see,
 
 CPLR 7502 [b]). The parties’ agreement there included these clauses: an arbitration clause that " '[a]ny controversy * * * shall be settled by arbitration,’ ” and a choice of law provision that " '[t]his agreement and its enforcement shall be governed by the laws of the State of New York’ ”
 
 (id.).
 
 The securities brokers in
 
 Luckie
 
 moved to stay arbitration on the ground that the investors’ claims were barred by New York’s applicable
 
 *48
 
 six-year Statute of Limitations
 
 {id.,
 
 at 198). The issue, thus, was whether the statutory bar should be resolved by the arbitrators or the courts
 
 {id.).
 

 Importantly and distinguishably,
 
 Luckie
 
 was narrowly tailored to the specific framework presented by that case and was not projected as a preclusion against parties freely contracting to submit every part of their disputes to arbitration (s
 
 ee, Matter of Smith Barney, Harris Upham & Co. v Luckie, supra, 85
 
 NY2d, at 207 [Kaye, Ch. J., concurring]). The Court noted the strong "Federal policy favoring liberal enforcement of agreements to arbitrate,” a policy New York courts have also long promoted, and stated that a choice of law provision in an agreement will not predominate if "the chosen law creates a conflict with the terms of, or policies underlying, the [Federal Arbitration Act]”
 
 (id.,
 
 at 201, citing
 
 Volt Information Sciences v Leland Stanford Jr. Univ.,
 
 489 US 468, 476). The Court determined, however, in that particular instance that "the [relevant CPLR provisions] authorizing the courts to consider a time limitation asserted as a bar to arbitration in connection with an application to compel or stay arbitration do not expressly conflict with any provisions of the FAA”
 
 (id.,
 
 at 203).
 

 Furthermore, the Court very significantly demarcated that "[c]learly, under New York law,
 
 statutory
 
 time limitations questions such as those presented on these two appeals — as opposed to
 
 contractual
 
 time limitations agreed upon by the parties — are for the courts, not the arbitrators”
 
 (id.,
 
 at 202, citing
 
 Matter of County of Rockland [Primiano Constr. Co.],
 
 51 NY2d 1, 9 [emphasis in original]). That effectively differentiates the
 
 Luckie
 
 holding from the instant matters and the analysis that supports the rationale and result we reach here.
 

 First, only a NASD contractual time limitation is at issue in these proceedings. Next, the
 
 Luckie
 
 Court was interpreting the specific language of the subject choice of law provision, which applied to the " 'agreement
 
 and its
 
 enforcement’ ”
 
 (id.,
 
 at 198 [emphasis added]). The Court stated that the arbitration clause "was subject to the parties’ additional qualification that New York State law provides the basis of decision for questions concerning
 
 not only the agreement, but more critically, its
 
 enforcement”
 
 (id.,
 
 at 202 [emphasis added]).
 

 In addition to the cogency of those differentiating features, attention must also be paid to
 
 Mastrobuono v Shearson Lehman Hutton
 
 (514 US 52,
 
 supra).
 
 There, the subject customer
 
 *49
 
 agreement similarly included a New York choice of law provision along with an arbitration clause requiring that "any controversy” be arbitrated in accordance with the rules of the NASD
 
 (id.,
 
 at 58-59). The brokerage house challenged the arbitrator’s award of punitive damages on the ground that the choice of law provision mandated the application of New York law, which prohibits arbitrators from awarding punitive damages
 
 (id.,
 
 at 54). The United States Supreme Court reversed both lower courts and held that the arbitrator properly awarded punitive damages, despite the fact that New York law confines the power to award punitive damages to judicial tribunals
 
 (id.,
 
 at 55).
 

 The United States Supreme Court declared that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York’ to encompass substantive principles that New York courts would apply,
 
 but not to include special rules limiting the authority of
 
 arbitrators”
 
 (id.,
 
 at 63-64 [emphasis added];
 
 see, Paine Webber Inc. v Bybyk, supra,
 
 81 F3d, at 1200;
 
 Paine Webber Inc. v Elahi,
 
 87 F3d 589, 593,
 
 supra).
 
 In summary, it declared that "the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other”
 
 (id.,
 
 at 64).
 

 We, therefore, conclude that the New York choice of law provision in the subject agreements does not diminish the parties’ intention to arbitrate "any and all controversies.” While a choice of law clause incorporates substantive New York principles, it does not also pull in conflicting restrictions on the scope of the authority of arbitrators and the competence of parties to contract for plenary alternative dispute resolution.
 

 V.
 

 This decision fortifies and advances the long and strong public policy favoring arbitration
 
 (see, Matter of Weinrott [Carp],
 
 32 NY2d 190, 199;
 
 see also, Sablosky v Gordon Co.,
 
 73 NY2d 133, 138;
 
 Mobil Oil Indonesia v Asamera Oil [Indonesia],
 
 43 NY2d 276, 281-282;
 
 Matter of Prinze [Jonas],
 
 38 NY2d 570, 574). We have declared that "this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties”
 
 (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,
 
 37 NY2d 91, 95,
 
 supra; see also,
 
 Note,
 
 Scope of Arbitration Clauses in Commercial Contracts,
 
 34 St John’s L Rev 236, 249 [May 1960]). Therefore, "New York courts interfere 'as little as possible with the
 
 *50
 
 freedom of consenting parties’ to submit disputes to arbitration”
 
 (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78
 
 NY2d 88, 93, quoting
 
 Matter of Siegel v Lewis,
 
 40 NY2d 687, 689;
 
 see, Matter of Marchant v Mead-Morrison Mfg. Co.,
 
 252 NY 284, 298-299 [Cardozo, Ch. J.]).
 

 Frankly stated, a contrary result would curtail or divert this progressive and prudent policy favoring arbitration. Parties should be free to opt for this forum outlet and for comprehensive resolution in those settings. Courts should be very hesitant, therefore, to impinge upon the rights and obligations derived from commitments to integrated, relatively speedier and less costly alternative dispute resolution modalities. Lastly, it would be ironic and anomalous to permit parties from the securities industry, who generally derive benefits from the arbitration method they impose on their thousands of consumers, to elude the comprehensive language of their own industry-drafted arbitration agreements. Having agreed to plenary arbitration, they should not garner that strategic advantage against their aggrieved or dissatisfied customers.
 

 Accordingly, the orders of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 In each case: Order affirmed, with costs.