**ProSight Specialty Mgt. Co., Inc. v Altruis Group, LLC**

2024 NY Slip Op 33245(U)

September 16, 2024

Supreme Court, New York County

Docket Number: Index No. 653775/2023

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

-------------------------------------------------------------------------------X

PROSIGHT SPECIALTY MANAGEMENT COMPANY,
INC.,NEW YORK MARINE AND GENERAL INSURANCE
COMPANY, GOTHAM INSURANCE COMPANY

                                Plaintiff,

                - v -

ALTRUIS GROUP, LLC,

                         Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 653775/2023 |
| **MOTION DATE** | 03/29/2024, 04/01/2024, 03/29/2024 |
| **MOTION SEQ. NO.** | 002 003 004 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 86, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 144, 145, 146

were read on this motion to/for            JUDGMENT - SUMMARY         .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 81, 82, 83, 84, 85, 88, 89, 90, 91, 92, 93, 94, 95, 96

were read on this motion to/for                 STAY              .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143

were read on this motion to/for          PARTIAL SUMMARY JUDGMENT    .

Upon the foregoing documents and for the reasons set forth below, (i) Altrius Group, LLC

(**Altrius**)'s and ProSight Specialty Management Company, Inc. n/k/a Coaction Specialty

Management Company, Inc., New York Marine and General Insurance Company, and Gotham

Insurance Company (collectively, **ProSight**)'s competing motions for summary judgment (Mtn.

Seq. Nos. 002 and 004) and (ii) Altrius' motion to stay arbitration (Mtn. Seq. No. 003) are

DENIED.

653775/2023   **PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
Motion No.  002 003 004

Page 1 of 16

## I.    Summary Judgment is Denied

Summary judgment shall be granted only when the movant presents evidentiary proof in admissible form that there are no triable issues of material fact and that there is either no defense to the cause of action or that the cause of action or defense has no merit (CPLR § 3212 [b]; *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The proponent of a summary judgment motion carries the initial burden to make a *prima facie* showing of entitlement to judgment as a matter of law (*Alvarez*, 68 NY2d at 324). Failure to make such a showing requires denial of the motion (*id.*, citing *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Once this showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form to establish the existence of material issues of fact requiring trial (*id.*).

The heart of what is at issue on the competing motions for summary judgment is (i) what certain language means in a Niche Management Agreement (the **Original NMA;** NYSCEF Doc. No. 38), dated February 4, 2020, as amended by a certain Amendment to Niche Management Agreement, effective as of May 4, 2024 (NYSCEF Doc. No. 39, the **Amendment;** the Amendment together with the Original NMA, hereinafter, collectively, the **NMA**), each by and between ProSight, and Altruis and (ii) whether Altruis performed under the NMA as the parties understood that it was required to perform.

Upon further review neither motion for summary judgment can be granted. Trial is required.

### A.    The NMA means that Altruis was required to do "some, all or none of the minimum services" as required by ProSight

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No.  002 003 004**

**Page 2 of 16**

The first issue, what the NMA says and means, presents a matter of contract interpretation soundly within the provenance of the Court. As the United States District Court for the Southern District of New York (the **SDNY Court**) indicated, both parties argue the language is unambiguous. Both however urge the Court to accept a different meaning.

The language in dispute is as follows:

A. Beginning at the Appointment Point, the Niche Administrator is hereby authorized and obligated to perform all the minimum services set forth below in this Section 6.1 (the "Minimum Services") with respect to any and/or all Captive Capabilities Niche transactions. At the Company's sole option, the Niche Administrator shall perform some, all, or none of the Minimum Services with respect to any and/or all Captive Capabilities Niche transactions. To the extent the Niche Administrator shall perform additional services with respect to a Captive Capabilities Niche transaction, the Company and the Niche Administrator shall separately agree in writing to which Captive Services the Niche Administrator shall perform and the amount of any Commission applicable in such Captive Capabilities Niche transaction, and shall be attached hereto in sequence in Exhibit B, the terms of which shall be governed by this Agreement as addendums thereto.

(NYSCEF Doc. No. 39 § 2[A][A]).

According to Altruis, this language means that Altruis was obligated to perform any of the Minimum Services for a Captive when specifically requested to do so by ProSight (NYSCEF Doc. No. 131, at 14-15). Altruis contends that, because it performed all the services that ProSight made a request for during the duration of the NMA, Altruis is thus entitled to payment of the Minimum Commission (*id.* at 15).

653775/2023    **PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**    Page 3 of 16
Motion No. 002 003 004

3 of 16

According to ProSight, Altruis is not entitled to the Minimum Commission set forth in the NMA (*id.* at 19) because this provision means that Altruis was obligated to perform *all* of the Minimum Services for *all* of the Captives, regardless of whether ProSight made any request for such services. In fact, according to ProSight, Altruis' performance was excused only when ProSight informed Altruis that it did not have to provide the Minimum Services for any particular Captive (NYSCEF Doc. No. 34, at 11). Inasmuch as Altruis did not perform all the Minimum Services at any time for all Captives since the NMA was executed, Altrius was and is not entitled to payment of the Minimum Commission.

Previously, Altruis had brought a lawsuit in the SDNY Court seeking, among other things, enforcement of the terms of the NMA to be paid its Minimum Commission. As discussed below, ultimately, the SDNY Court dismissed the case brought there on jurisdictional grounds before it determined a prevailing party as to the enforcement of the NMA. issue. Enforcement of the NMA (as set forth in Section 16 of the NMA) is in fact what it is squarely at issue in this Court.

More specifically, Altruis brought claims sounding in breach of contract, breach of the covenant of good faith and fair dealing, violation of NY General Business Law § 349, and a declaratory judgment that Altruis owns the sole undivided rights to all Captive Capabilities Niche Intellectual Property (NYSCEF Doc. No. 90). When the SDNY Court (Vysckocil, Mary-Kay, J.) reviewed the language in dispute, the SDNY Court indicated that based solely upon the plain text of the NMA, both interpretations offered by the parties were reasonable:

> [ProSight] rel[ies] primarily on the first sentence. They contend that, irrespective
> of what [ProSight] instructed [Altruis] to do, [Altruis] was still "obligated to

**653775/2023 PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No. 002 003 004**

**Page 4 of 16**

4 of 16

perform all the minimum services." The Court finds this reading reasonable because the first sentence specifically provides that [Altruis] was "obligated" to perform the Minimum Services and provides a time at which performance needed to begin: "the Appointment Point." Moreover, the word "hereby" immediately preceding "authorized and obligated" further indicates that [Altruis] would not become bound at some indefinite time in the future when [ProSight] requested performance. Rather, [Altruis]'s obligation attached upon adoption of Section 6.1.

[Altruis] [argues that it only needed to perform the "services [that] it was asked to . . . perform." In other words, while [Altruis] was "authorized and obligated to perform all the minimum services," its obligations arose only when [ProSight] exercised their "sole option" and requested that [Altruis] "perform some, all, or none of the Minimum Services." This interpretation is reasonable, as well. Under this view, the second sentence clarifies when (and to what extent) [Altruis] was obligated to perform the Minimum Services. After all, how would [Altruis] know whether to perform "some, all, or none of the Minimum Services" without direction from [ProSight]? Further, if the first sentence created an obligation that was effective immediately, as [ProSight] urge[s], it would be redundant—and perhaps even contradictory—to say that [Altruis]'s obligation to perform "all" the Minimum Services was at [ProSight]'s "sole option."

(NYSCEF Doc. No. 130, at 8).

As discussed above, the SDNY Court dismissed certain of the causes of action levelled by Altrius, and ultimately dismissed the lawsuit without reaching the merits of the causes of action seeking enforcement of the NMA, holding that the SDNY Court lacked jurisdiction.

Upon review of the language at issue by this Court, this Court agrees that adoption of either party's proffered interpretation cannot be resolved solely by consideration of the plain language. Thus, although both parties contend that the NMA is not ambiguous, consideration of extrinsic evidence is appropriate.

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No. 002 003 004**

**Page 5 of 16**

5 of 16

Upon review of the extrinsic evidence on the fully developed record before this Court, however, the meaning of the NMA becomes clear. As discussed more fully below, Altruis was required to perform "some, all, or none" of the Minimum Services for any or all Captive entities that ProSight required it to perform for no additional compensation. As to any other services, the parties would be required to execute a separate agreement where additional compensation would be discussed. In other words, the first sentence makes clear that Altruis was required to perform certain Minimum Services under the NMA without additional compensation. The second sentence clarifies that Altrius was only required to perform those Minimum Services requested by ProSight for any Captive that ProSight required it to perform those services for, as identified by ProSight and as needed by a particular Captive.

This understanding is confirmed by the fact that the parties understood when they executed the NMA that (i) Altrius did not in fact have the capacity to perform the Minimum Services on Day 1 of the NMA, (ii) that ProSight was exploring and developing its Captive business and (iii) ProSight was prepared to have Altrius mature into an organization that could support these Minimum Services over time. Reviewed with this in mind, the NMA provides that Altruis had to provide Minimum Services as of the Appointment Date -- *i.e.*, when it obtained all necessary licenses and not the Effective Date:

> A. The Company hereby nominates, constitutes and appoints the Niche Administrator as its legal representative and true and lawful attorney to act in the Company's behalf in performing functions as described in Section 5 hereof ("Captive Services") as agreed from time to time per Section 14.A hereof, such appointment to take effect immediately upon the Niche Administrator's obtaining all necessary licenses to act as a broker as contemplated hereunder (the "Appointment Point"). This appointment shall apply only with respect to insurance business in which the Company works

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**                                                                                   **Page 6 of 16**
**Motion No.  002 003 004**

6 of 16

with captive insurers (each, a "Captive") in accordance with the underwriting guidelines (the "Underwriting Guidelines") set forth in Exhibit A, which is attached hereto and made a part hereof (the "Captive Capabilities Niche").

(NYSCEF Doc. No. 38 § 2[A]).

In fact, this explains the apparent ambiguity between the first and second sentences discussed above. The parties understood when the NMA was executed that in the future there would come a point in time when, to earn the Minimum Commission, ProSight would be able to call upon Altruis to provide the Minimum Services for any particular Captive, but inasmuch as the Captives and their needs were unknown when the NMA was executed, Altruis only had to actually provide "some, all, or none" of the Minimum Services for any particular Captive as required by ProSight.

In support of its motion for Summary Judgment, Altruis relies on the plain text of the NMA and also deposition testimony of Robert Bailey. By way of background, the NMA was executed on behalf of Altruis by Joe Beneducci, Sr., and by Robert Bailey on behalf of ProSight. Mr. Beneducci was the former founder and CEO of ProSight (NYSCEF Doc. No. 21, at 2). He left ProSight in 2010 and formed Altruis. ProSight hired Altruis to assist in the placement of certain Captive insurance entities.

At Mr. Bailey's deposition, Altruis argues that he corroborated their interpretation of the Agreement. Indeed, the deposition of Mr. Bailey would also seem to explain the balance of the provision – namely that if ProSight needed additional services, Altruis was not required to provide them based upon the Minimum Commission. Additional agreement was required:

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No. 002 003 004**

**Page 7 of 16**

7 of 16

A: . . .I'm like, you know, these are not things to do, these are capabilities, and, by the way, some of them we may not need for two years.

Q: Well, I know you're saying they're capabilities. We did look at the agreement before where you made clear that these were the minimum services, correct?

A: ***Yes, they are minimum services, but that doesn't mean they have to be provided in any specific time frame or context. They are provided when we want them and need them. If we didn't want them or need them, they wouldn't have been provided.***

(NYSCEF Doc. No. 59, at 221 [emphasis added]).

Q: You had testified earlier, multiple times, and, again, correct me if I misstate your testimony, but ***you referred to the services or the obligations*** under the NMA, the amendment to the NMA, ***as Altruis's capabilities, correct***?

A: ***Correct.***

Q: What did you mean when you said it was your understanding that they had to have the capabilities to do those things outlined in the NMA amendment in April?

A: Well, I think that gets, you know, to the point of the distinction, you know. The – what we wanted was, you know, the ability to have these things done, you know, that if we wanted to know what was the erosion on the layer for captive XYZ that has an X stop at $2 million, where are they now? We wanted to be able to ask that question, get that answer, and that requires a certain ability to do that, to aggregate those numbers. Now, ***it's ability on demand. There wasn't a, well, every quarter, you know, we want to see a report on all of this, because captives just don't work that way, you don't need that. But should – you know, if we wanted it on a quarterly basis for captive XYZ, we wanted to be able to ask that question and et that answer, and that required, you know, a certain foundational ability for them to be able to do that for us.***

Q: Were you aware of any circumstances where requests were made of Altruis that could not be performed by them during the time the NMA was in effect?

A: No, I'm unaware of that.

Q: And that was your understanding at the time you drafted the – or participated in the drafting of the amendment to the – the April amendment to the NMA, correct. . . . You were aware that the intent was that Altruis have the capability so that if asked, they could perform those requests, correct?

A: ***The intent was that they would build those capabilities. We knew very well on day one they didn't have any of these capabilities and nor would they on day***

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS**                                    **Page 8 of 16**
**GROUP, LLC**
**Motion No.  002 003 004**

8 of 16

*two, unlikely day three and so on. So we were – we were, you know, and emphasizing for a progression towards those capabilities.*

Q: And it was constructed that way, you would agree with me, because neither ProSight nor Altruis knew how much work would be needed or how much additional expense would be needed to build out the captive program, correct?

A: *We did not know, and it was – it would obviously have been subject to the amount of premium, you know, the amount of captives we did right and the type of captives we did right. So, no, it would be very difficult to predict.*

(*id.* at 243-247 [emphasis added]).

Q: . . . "At the Company's sole option, the Niche Administrator shall perform some, all, or none of the Minimum Services with respect to any and/or all Captive Capabilities Niche transactions." Did I read that correctly?

A: Yes, you did.

Q: Do you have an understanding as to what the intent of that sentence in the April amendment was for?

A: Well, I think that's – you know, that's the – you know, an example of, you know, the sentiment that *not every captive is going to need every one of these things, and these things may be needed on an ad hoc basis when we ask for them, and, you know, it's not a, you know, we need you to do all of these things by the 3rd of every month kind of thing, it's we may ask you for it on this captive, we may not on that one, and we may ask you on this one but not for two more years. That's what that means to me.*

Q: And it states: *"At the Company's sole option," correct*?

A: *Correct.*

Q: The company had the ability to ask for some, all, or none of those minimum services to be performed, correct?

A: Yeah, that is – that was – that is correct, we were in control and we always wanted to be in control of managing the captives. They were providing a resource. They weren't managing the captive.

Q: And as long as Altruis had the capabilities and responded to requests that were made by ProSight, they were to be paid in accordance with the schedule that's included in this April amendment, correct?

A: I would expect so.

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No. 002 003 004**

Page 9 of 16

(*id.* at 252-254 [emphasis added]).

Altruis also argues that contract interpretation requires that you must give each provision of a contract meaning. Altruis contends that no other provision of the NMA indicates how Altruis was supposed to determine "which Captives would require which services," and that it would be "illogical" for the NMA to require Altruis to "perform services for Captive clients where those services were not needed or requested" (NYSCEF Doc. No. 146, at 5).

In their opposition to Altruis's motion for summary judgment and in support of their own motion for summary judgment, ProSight also looks to the testimony of Robert Bailey. They argue that Mr. Bailey's statements support their interpretation that Altruis' right to receive the Minimum Commission was contingent upon its performance of *all* the Minimum Services for every Captive, independent of any specific requests that ProSight might subsequently make:

> Q. Well, let's look at your second item, you took out some of what was there as they aren't always going to be required; do you see that?
>
> A. Oh, okay. All right.
>
> Q. So fair to say that your -- and we'll look at the attachment now for a moment, but at least from the way you describe it here, your intent in these changes was to truly identify the minimum services that would be required across the board, correct?
>
> A: That's what it seems, yeah, right.
>
> Q. Okay. And let's look at the amendment, your revisions to it, and I will represent to you the highlighted portions here are what appear to be what you added, and I can show them side by side to you just so you can see.
>
> A. Oh, the highlighted is what I added?
>
> Q. Added or struck through. Do you see you removed sections here?
>
> A. Yes

. . . .
653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC
Motion No. 002 003 004

Page 10 of 16

10 of 16

Q. Okay. And you say: "Each Captive Entity will have its own service needs such that a generic, encompassing service template is impractical." And this is what you have been testifying about so far today.

A. At least I'm consistent.

Q. "Each Captive will have separate addendum to this agreement specifying the particular servicing needs of that customer." And then you say: "This section outlines the basic minimum requirements that ANY and ALL Captives written or supported by ProSight will require." Do you see that?

A. I do.

Q. So, again, fair to say that what you intended by this document was truly the base minimum requirements that every captive would require across the board?

A: That's what it -- yeah, that's what it seems, yeah. It's an aggressive call, but good for me.

Q. Okay. And then based on that construction of what you were trying to accomplish here, you removed Section A, "Policy Administration," and is that because not all captives would require policy administration by Altruis?

A. Correct.

Q. And you removed certain items under "Claims Interface and Oversight" and "Underwriting." Is that for the same reason?

A. Correct.

Q. Okay. And then you added certain items, "Compliance;" do you see that under D?

A. Uh-huh.

Q. And under "Claims Interface and Oversight" you added a subpoint: "Serve as primary point of contact between TPA and the Captive Customer;" do you see that?

A. I do.

Q. So, again, these were intended to be the minimums and the things that you struck could potentially apply on a captive by captive basis to be agreed upon going forward; is that fair to say?

A. I think that's very fair to say.

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No.  002 003 004**

**Page 11 of 16**

11 of 16

(NYSCEF Doc. No. 104, at 144-148).

Put another way, ProSight argues that certain changes in the documents and elimination of certain provisions meant that ProSight was requiring Altruis to provide certain minimum services as Minimum Services as of the Appointment Date for all Captives unless ProSight indicated otherwise. But this is not exactly what Mr. Bailey said.

What Mr. Bailey said was that certain changes were made as to what the Minimum Services included and which services would not be considered part of the Minimum Services to which ProSight could call upon Altruis to provide without additional compensation. Put another way, Mr. Bailey's testimony confirms that when changes were made to the NMA, they were made based on bifurcating that which Altruis would be required to provide for each and every Captive *as requested by ProSight* without additional compensation. His testimony was not however that Altruis had to provide those services automatically for each Captive without indication from ProSight as to which Captive needed which Minimum Services. If this was the intention (which he testified it was not) and what the NMA means, the second sentence in Section 6.1 would be inconsistent and redundant as the SDNY Court commented.

Understood, however, in this context, Altruis' proffered interpretation reconciles any ambiguity in the NMA. Indeed, Altruis' proffered meaning reconciles both the portion of Mr. Bailey's testimony relied upon by Altruis and the portion of the testimony relied upon by ProSight. Prosight's proffered interpretation is, on the other hand, irreconcilably inconsistent with the totality of Mr. Bailey's testimony and the second sentence of the provision at issue. Indeed, as

**653775/2023 PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No. 002 003 004**

**Page 12 of 16**

the SDNY Court noted, and as Mr. Bailey testified, Altruis would never know which of the Minimum Services to provide for which of the Captives. Thus, there is no issue of triable fact as to what the NMA means.

**A.    Issues of fact preclude summary judgment as to Altruis' performance**

As discussed above, the NMA reflects the understanding that over time Altrius would need to be able to perform "some, all, or none" of the Minimum Services that the parties anticipated the Captives might need. This reading of the NMA does not mean however that the parties agreed that Altruis would never be required to build the capacity to provide the Minimum Services for all Captives if they were required to provide all such Minimum Services by ProSight. The fully developed record confirms that at the time the NMA was signed, ProSight had only one Captive client. Neither party could anticipate the growth of the business or what was to be required for Captives that would be added. The record however does not establish when and how the development of Altruis' capacity was to occur. Put another way, while there are no issues of fact as to the NMA's meaning, the NMA appears to be incomplete in that it does not address at what point in time or what the parties intended for when Altruis was going to have to be fully functional to meet ProSight's needs as to the provision of any and all Minimum Services to any and all Captives – *i.e.*, was Altruis' growth supposed to be in tandem with the Captive business or in response.

Simply put, the NMA does not address this and the record before the Court does not permit the Court to determine whether there came a point in time when Altruis either fell short or did not fall short of the parties' understanding as to its required development so that it could perform

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC
Motion No.  002 003 004**

**Page 13 of 16**

13 of 16

"some, all, or none" of the Minimum Services required by ProSight. Thus, on this record, it simply is not dispositive that Mr. Bailey testified in sum and substance that he could not recall a time when Altrius did not do what it was asked to do. Accordingly, there are issues of fact as to whether Altruis met or did not meet its obligations to be available on demand to perform "some, all, or none" of the Minimum Services required by Prosight consistent with the parties understanding as to Altruis' development. Therefore, the motions for summary judgment are denied.

## II.     Altruis' Motion to Stay Arbitration is Denied

Altruis' motion to stay the arbitration proceeding currently pending before the American Arbitration Association (the **AAA**) is also denied.

In relevant part, the NMA provides that:

> B. In the event a claim arises out of this Agreement in which either party seeks damages exceeding $150,000, the Company shall have the ability to demand arbitration as the means for resolving the claim in lieu of a proceeding in a Chosen Court. Should the Company exercise its rights under this paragraph C:
>
> i. The arbitration is to be carried out by a panel of three (3) arbitrators and **according to the AAA rules** and the decision of the arbitrator shall be final and binding on both the parties. In the selection of the panel of arbitrators, each party shall select one (1) arbitrator and the two (2) party-selected arbitrators shall select a third to act as chair of the panel. The arbitration shall be conducted in New York, NY or such other location as may be mutually agreed upon by the parties. All statutes of limitations applicable to any dispute shall apply to any arbitration proceeding. All discovery activities shall be expressly limited to matters directly relevant to the dispute being arbitrated and subject to limitation by the arbitrator to a level commensurate with the amount in controversy and complexity of the issues involved. Judgment upon any award rendered in arbitration may be entered in any court having jurisdiction.

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No.  002 003 004**

**Page 14 of 16**

14 of 16

· · ·

    C.  In the event of any dispute arising out of or related to this Agreement, and subject to section 16.C hereof, the prevailing party shall have the right to collect from the other party its reasonable costs and necessary disbursements, including reasonable attorneys' fees, incurred in enforcing the terms of this Agreement.

(NYSCEF Doc. No. 38 §§ 16[C][i], [D] [emphasis added]).

In support of its motion seeking a permanent stay, Altrius argues, among other things, that there is a substantial risk that the arbitration would potentially produce inconsistent results as to who the prevailing party is as to enforcement of the NMA and thus this Court should decide the issue as to whether the issue put to the AAA is arbitral. The argument fails.

Where an agreement requires that all arbitration proceedings arising under the agreement are to be governed by the AAA Rules, then the arbitration tribunal shall make all determinations as to "its own jurisdiction, including objections with respect to the existence, scope or validity of the arbitration agreement" (*Life Receivables Tr. v Goshawk Syndicate 102 at Loyd's*, 66 AD3d 495, 496 [1st Dept 2009], *aff'd*, 14 NY3d 850 [2010]).

    Although the question of arbitrability is generally an issue for judicial determination, when the parties' agreement specifically incorporates by reference the AAA rules . . . courts will 'leave the question of arbitrability to the arbitrators.

(*id.* [citing *Matter of Smith Barney Shearson v. Sacharow*, 91 NY2d 39, 47 (1997)]). In the NMA, the parties agreed that arbitrations are to be conducted by the AAA and are thus subject to

**653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC**
**Motion No.  002 003 004**

**Page 15 of 16**

their rules.  It is not for this Court to arrogate this decision to itself.  Thus, a stay is inappropriate, and the motion is therefore denied.

Accordingly, it is hereby

ORDERED that the competing motions for summary judgment (Mtn. Seq. Nos. 002 and 004) are DENIED; and it is further

ORDERED that Altruis' motion to stay arbitration (Mtn. Seq. No. 003) is DENIED.

20240916154416AB0RR0K6B38707F846B45879B1EC99B0DFE569B

**9/16/2024**
**DATE**

**ANDREW BORROK, J.S.C.**

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

653775/2023   PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC. ET AL vs. ALTRUIS GROUP, LLC
Motion No.  002 003 004

Page 16 of 16

16 of 16