| **Halperin v Souid** |
|:---:|
| 2024 NY Slip Op 34264(U) |
| December 3, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 528008/2024 |
| Judge: Leon Ruchelsman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: COMMERCIAL 8
------------------------------------------------x
PINCHAS HALPERIN,

                          Petitioner       Decision and order

       - against -                  Index No. 528008/2024

DR. SALIM SOUID,

                      Respondent,      December 3, 2024
------------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN         Motion Seq. #1


The petitioner has moved CPLR §7503 seeking to compel arbitration. The respondent has opposed the motion. Papers were submitted by the parties and arguments were held. After reviewing all the arguments, this court now makes the following determination.

On June 15, 2022 the respondent executed an operating agreement whereby he agreed to become the medical director of a medical facility called Health Plus MD LLC. The petition alleges that in July 2024 the respondent violated the operating agreement by assuming management authority not permitted pursuant to the agreement. This included, essentially, locking the petitioner out of the business in all respects. Pursuant to Article 12.2 of the operating agreement the petitioner demanded arbitration before the arbitrator specifically delineated within the operating agreement. The respondent refused to participate with that arbitrator and this motion has now been filed. The petitioner seeks to compel arbitration. The respondent opposes the motion arguing he never really signed the operating agreement

[* 1]

and thus is not bound by its terms.

## Conclusions of Law

"It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions" (Westinghouse Electric Corporation v. New York City Transit Authority, 82 NY2d 47, 603 NYS2d 404 [1993], citing earlier authority). Arbitration has long been shown to be an effective "means of conserving the time and resources of the courts and the contracting parties" (Matter of Nationwide General Insurance Company, 37 NY2d 91, 371 NYS2d 463 [1975]). The Court of Appeals noted that "one way to encourage the use of the arbitration forum...would be to prevent parties to such agreements from using the courts as a vehicle to protract litigation" as such conduct "has the effect of frustrating both the initial intent of the parties as well as legislative policy" (id). Indeed, "New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration" (Smith Barney Shearson Inc. v. Sacharow, 91 NY2d 39, 666 NYS2d 990 [1997] quoting, Matter of 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 78 NY2d 88 [1991]).

It is further well settled that a party cannot be subject to arbitration absent a clear and unequivocal agreement to arbitrate (see, Waldron v. Goddess, 61 NY2d 181, 473 NYS2d 136 [1984]). Thus, where an arbitration clause encompasses all disputes

2

[*2]

between the parties and is unambiguous such arbitration clause will be enforced (Stoll America Knitting Machinery Inc., v. Creative Knitwear Corp., 5 AD3d 586, 772 NYS2d 863 [2d Dept., 2004]).

The respondent asserts that while he did sign a signature page and the petitioner also signed a signature page, the operating agreement that contains the arbitration clause was another agreement that was never signed by the respondent. The respondent states that "while we were meeting, Petitioner asked me to sign the Other Company's Operating Agreement. Rather than signing the same page and/or signing the same agreement, at Petitioner's suggestion, he printed out only what he said were the applicable signature pages, and he signed his signature page and I signed my signature page. Also at Petitioner's suggestion, we then exchanged each other's signature pages only" (see, Affirmation of Dr. Salim Souid, ¶16 [NYSCEF Doc. No. 35]). However, no such signature pages have been submitted for review. Indeed, the operating agreement submitted by the petitioner contains sixteen pages followed by a seventeenth page consisting of a table of membership interests. Page fifteen concludes with the words "Signature Page Follows" and page 16 is in fact a signature page executed by both parties (see, Health Plus MC LLC Limited Liability Company Operating Agreement" (NYSCEF Doc. No. 5]). Further, each page of the agreement states that it is an

3

[*3]

"Execution Copy" (id). Thus, there is no evidence of multiple signature pages and "a cobbled-together version of the agreement" (see, Affirmation of Dr. Salim Souid, ¶18 [NYSCEF Doc. No. 35]). Further, there is really no dispute an earlier version of a draft agreement was forwarded to the respondent in error and counsel for the respondent specifically pointed out that the wrong version had been sent. Counsel for the respondent emailed the petitioner and wrote "please re-execute the correct, and agreed-upon version (attached again). Please note that the correct version is titled "EXECUTION COPY" and this designation also appears in the header of the document. Only executing this version will be effective" (see, Email sent June 22, 2022 at 11:23 AM [NYSCEF Doc. No. 36]). Consequently, the only document presented for review in this case is the same document executed by both parties upon the advice of counsel. There is no basis to raise any questions there was never a meeting of the minds regarding the agreement. Moreover, the mere fact some of the other provisions of the agreement may have been ignored or violated does undermine its validity as a whole.

Furthermore, the operating agreement states that "any claim arising in connection with or related to this Agreement or any breach hereof, or otherwise the business of Company" shall be heard by arbitrator enumerated within the agreement (see, Operating Agreement, ¶12.2 [NYSCEF Dcoc. No. 5]). The respondent argues that the dispute between the parties does not involve the company that is the subject of the operating agreement. Rather,

4

the dispute involves the management of ElNunu Medical P.C. a different entity entirely. However, the preliminary statement of the operating agreement for Health Plus MD LLC specifically acknowledges the respondent's ownership of ElNunu Medical P.C. and specifically excludes the respondent's work at three other locations. Thus, there are surely questions whether the agreement for Health Plus MD LLC somehow includes ElNunu P.C. The operating agreement does state that "this Agreement excludes use of the name "El Nunu" other than for billing purposes, and otherwise to be used by Souid on an ongoing basis in connection with any of the above contexts" (see, Operating Agreement, Preliminary Statement [NYSCEF Doc. No. 5]). That exclusion may surely indicate that the respondent's practice is included within the operating agreement. The arbitrator can decide the extent to which that is true.

Therefore, based on the foregoing, the motion seeking to compel arbitration pursuant to the terms of the operating agreement is granted.

Considering this guidance any request for sanctions at this time is not considered. The petitioner may move for sanctions not before thirty days from receipt of this order if any non-compliance with this decision is alleged.

So ordered.

ENTER:

Dated: December 3, 2024
Brooklyn, N.Y.

_____
Hon. Leon Ruchelsman
JSC

5